IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| Raymond D. Leslie, | : | |
| Plaintiff | : | Civil Action 2:07-cv-00759 |
| v. | : | Judge Marbley |
| Michael J. Astrue, | : | Magistrate Judge Abel |
| Commissioner of Social Security, | | |
| Defendant | : | |

**REPORT AND RECOMMENDATION**

Plaintiff Raymond D. Leslie brings this action under 42 U.S.C. §§405(g) for review of a final decision of the Commissioner of Social Security denying his application for Supplemental Security Income benefits. This matter is before the Magistrate Judge for a report and recommendation on the parties' cross-motions for summary judgment.

**Summary of Issues.** Plaintiff Raymond Leslie maintains that he is disabled by coronary artery disease, chronic obstructive pulmonary disease ("COPD") degenerative disc disease in the lumbar spine, degenerative changes in acromioclavicular joints, bilaterally, left shoulder rotator cuff injury, depression, and anxiety. He was 53 years old the time of the administrative hearing. The administrative law judge found the Leslie retained the ability to perform a substantial number of jobs having light exertional demands.

Plaintiff argues that the decision of the Commissioner denying benefits should be reversed because:

- The administrative law judge erred by failing to give controlling weight, or at least great weight to the opinions of the treating physician;

- The administrative law judge erred by concluding that plaintiff did not have a severe mental impairment; and,

- The administrative law judge erred by applying Medical-Vocational Rule 202.14 to plaintiff.

Plaintiff also requests that this case be remanded under sentence six of 42 U.S.C. § 405(g).

**Procedural History.** Plaintiff Raymond D. Leslie filed an application for Supplemental Security Income on October 18, 1999, which was granted. He was found to be disabled as a result of coronary artery disease and diabetes mellitus, with a history of quadruple coronary artery bypass surgery. In August 2001, his benefits were terminated because of excess earnings from his then-wife. (R. 12.)

Leslie filed another application for disability insurance benefits on May 27, 2003, alleging that he became disabled on August 17, 1999, at age 46, by emphysema, a heart condition, and diabetes. (R. 106-08, 123.) The application was denied initially and upon reconsideration. Plaintiff sought a *de novo* hearing before an administrative law judge. On July 19, 2006, an administrative law judge held a hearing at which plaintiff, represented by counsel, appeared and testified. (R. 31.) A vocational expert and a medical advisor also testified. On December 28, 2006, the administrative law judge issued a decision finding that Leslie was not disabled within the meaning of the Act. (R. 21.) On June 4, 2007, the Appeals Council denied plaintiff's request for review and

adopted the administrative law judge's decision as the final decision of the Commissioner of Social Security. (R. 3-5.)

**Age, Education, and Work Experience.** Raymond D. Leslie was born November 10, 1952 (R. 106.) He has a GED. (R. 129.) He has worked as a heavy equipment mechanic for a trucking company. He last worked in August 1999. (R. 123.)

**Plaintiff's Testimony.** The administrative law judge summarized Leslie's testimony as follows:

> The claimant testified that he had a jig saw and made wood crafts for his female companion. He sometimes researched genealogy when he had access to a computer. He has also continued to engage in some work activity.

(R. 16.) Leslie testified that he had been living for the past six to eight months in a mobile home on the property of a cousin's friend's automotive repair shop. He is able to drive and has a driver's license. He has a GED. He began taking courses for a paralegal degree, but he did not complete it. He also went to automotive school. In the Navy, he was a machinist. He reported that he did not have any difficulty reading, writing, and doing simple arithmetic.

Leslie had recently lost weight because of problems keeping his food down. He suffers from acid reflux and problems in his esophagus.

He last worked in 2002. He was only able to drive a dump truck for two or three months. Following that, he attempted to work as a tow truck driver. He could not

handle the work, however, and he had to have someone drive for him sometimes. He could not climb in and out of the trucks.

Leslie testified that he had always been a mechanic working on trucks and heavy equipment. Being a mechanic is simply too physically demanding for him, and the most that he could do is perform a tune up. Bending and leaning over a car in the hot sun "zaps" him. He does attempt to help out around the shop where he stays by sweeping floors. In the past, he also went over to his cousin's shop and swept his floors or hosed down trucks to make a few dollars.

Leslie further testified that he cannot work because some days he cannot physically get out of bed. He hurts all over. He does not feel good, but he does not know why. His worst problem is the result of having his chest broken open for heart surgery. He never healed properly and when he attempts to lift something he experiences painful grinding and separating.

As a result of his heart condition, Leslie experiences episodes of lightheadedness and feeling faint. Two weeks before the hearing, he had to call the emergency squad because he experienced one of these spells. He felt as though his heart was going to stop or just beat right out of his chest. He also has pain in his shoulder joint, ankles, and wrist. He has breathing problems and uses a nebulizer. He continues to smoke, although he has repeatedly tried to quit.

**Medical Evidence of Record.** The administrative law judge's decision fairly sets out the relevant medical evidence of record. This Report and Recommendation will only briefly summarize that evidence.

**Physical Impairments.**

Maureen Gallagher, D.O. On July 17, 2003, Dr. Gallagher performed a medical examination for the Bureau of Disability Determination. (R. 176.) With respect to activities of daily living, Leslie had no difficulty climbing steps provided he could use a handrail. He had no difficulty sitting. He could stand for short periods of time, although his hips would begin to hurt. He could only walk for short distances before his ankles began to hurt. He injured his shoulder falling from a deck and continued to have difficulty lifting overhead.

Leslie reported having profound fatigue and fatigue with exertion. On physical examination, he had normal range of motion in all joints. He could lift 40 pounds and carry approximately 10 pounds. Dr. Gallagher indicated that Leslie should not be asked to repeatedly carry heavy objects or reach overhead. (R. 176-79.)

An July 17, 2003 PA and lateral x-ray of Leslie's chest showed status post open heart surgery with chronic pleural and parenchymal changes on the left. (R. 180.)

The Ohio State University Medical Center. On December 2003, Leslie was admitted to the hospital for sepsis. (R. 190-204.)

Elizabeth Das, M.D. On August 26, 2003, Dr. Das reviewed the medical record for the Commissioner and completed a physical residual functional capacity assessment. (R. 219-26.) Dr. Das opined that Leslie could occasionally lift 50pounds and frequently lift 25 pounds. He could stand and/or walk about 6 hours in an 8-hour workday. He could sit for a total of about 6 hours in an 8-hour workday. He was unlimited in his ability to push or pull other than restrictions based on how much he could lift and/or carry. He should avoid concentrated exposure to extreme temperatures. Dr. Das concluded that Leslie was partially credible. With respect to his history of heart bypass surgery, he was currently asymptomatic except for complaints of fatigue. On examination his strength was normal in both his upper and lower extremities with full range of motion. Eli N. Perencevich, D.O. reviewed the evidence in the file and Dr. Das's assessment and affirmed her findings.

Shoulder X-Rays. On December 2, 2003, bilateral shoulder x-rays revealed only minor degenerative changes of the acromioclavicular joint of the right shoulder and very minor degenerative changes of the acromioclavicular joint of his left shoulder. (R. 262-63.)

Lauri Nandyal, M.D. On January 28, 2005, Dr. Nandyal, Leslie's treating physician at the Veterans Administration Outpatient Clinic, completed a Physical Capacity Evaluation. (R. 227-28.) Dr. Nandyal opined that Leslie could lift and/or carry 10 pounds occasionally and 5 pounds frequently. She opined that Leslie could stand/walk for less than 2 hours in an 8 hour workday, and he could sit for 4 hours in

6

an 8 hour workday. Leslie could sit for 60 minutes before needing to stand and stand for 30 minutes before needing to sit. He would need to walk every 15 minutes for 15 minutes at a time. Dr. Nandyal also believed that Leslie would need to lie down two times during an 8 hour workday. Dr. Nandyal noted that Leslie was disabled primarily due to coronary artery disease. (R. 229.)

MRI of Left Shoulder. A May 6, 2005 MRI of Leslie's left shoulder showed tendinosis of the infraspinatus and supraspinatus tendons, partial articular-sided tear of the infraspinatus tendon insertion, degenerative joint disease with subacromial fat effacement of the AC joint, and diffuse labral tears including a SLAP lesion. (R. 310-11, 365.) On May 19, 2005, Leslie complained that he continued to have problems with chronic left shoulder and low back pain. (R. 325-26.)

EMG of Upper Extremities. An August 10, 2005 EMG showed moderate right median mononeuropathy at the wrist. (R. 311-12.) Wearing wrist splints at night was recommended, and if there was no improvement, Leslie was instructed to wear the splints during the day as well. (R. 313.) An August 12, 2005 x-ray of his shoulders showed bilateral acromioclavicular degenerative joint disease and a high riding left humeral head consistent with rotator cuff disease. (R. 318.)

Physical Therapy Evaluation. Leslie underwent a physical therapy evaluation. He had difficulty pushing himself out of bed with the left upper extremity as well as sitting, standing, walking, bending down to lift objects from the ground, and sleeping. (R. 334-35.)

<u>Heart Attack</u>. On July 25, 2006, Leslie was hospitalized because of a heart attack. A cardiac x-ray showed blunting of both costophrenic angles, greater on the left. A cardiac catheterization revealed severe diffuse coronary artery disease, which was not amenable to further revascularization. (R. 366, 372-73.) In a January 8, 2007 letter, Jane Hefferman, CNP wrote that Leslie suffered from Class III coronary artery disease, indicating that he should have limited ordinary physical activity. The results of the July 2006 cardiac catheterization meant that Leslie was unable to work. (R. 371.)

**Psychological Impairments.**

<u>Scott Lewis Donaldson, Ph.D.</u> On August 6, 2003, Dr. Donaldson, a psychologist, performed a psychological examination for the Commissioner. (R. 185-89.) On mental status examination, his mood was agitated and anxious with flat affect. Leslie exhibited good eye contact. He reported that his appetite was good, although h had lost twenty pounds. He has difficulty falling asleep and wakes up frequently during the night. He experienced feelings of hopelessness, helplessness, and worthlessness. He reported having mood swings three to four times a week. He reported being depressed on a weekly basis. Leslie admitted to a history of drug and alcohol abuse. He used crack, cocain, and marijuana for ten years.  He also reported that he had attended Narcotics Anonymous and Alcoholics Anonymous. (R. 187.) Dr. Donaldson diagnosed dysthymic disorder and anxiety disorder, not otherwise specified. He assigned a Global Assessment of Functioning score of 45-55. (R. 189.)

8

Dr. Donaldson concluded that Leslie's ability to understand, remember and carry out one- or two-step job instructions appears not to be impaired. His ability to perform repetitive tasks may be limited due to medical problems. Dr. Donaldson believed that Leslie may lack motivation based on his dysthymia and anxiety. His ability to attend to relevant stimuli appeared impeded. His interpersonal skills and his ability to relate to supervisors and co-workers appeared limited.

<u>Patricia S. Semmelman, Ph.D.</u> On January 16, 2004, Dr. Semmelman reviewed the medical record for the Commissioner and completed a psychiatric review technique form. (R. 205-17.) Dr. Semmeleman noted that plaintiff had dysthymia and a mild anxiety disorder. She also noted his history of drug and alcohol abuse/dependence. Dr. Semmelman concluded that Leslie had no restriction of activities of daily living or episodes of decompensation. Leslie had only mild difficulties in maintaining social functioning and in maintaining concentration, persistence, or pace.

**Administrative Law Judge's Findings.**

1. The claimant has not been engaged in substantial gainful activity since May 27, 2003, the filing date of his application for supplemental security income.

2. The claimant has the following impairments that reduce his ability to perform basic work-related functions: coronary artery disease, tobacco abuse, diabetes mellitus, moderate right carpal tunnel syndrome, minimal degenerative joint disease of his lumbar spine, and degenerative joint disease of his shoulders.

3. Based on expert testimony and objective medical evidence, the claimant does not have an impairment or combination of

9

    impairments listed in, or medically equal to one listed in, 20 CFR Part 404, Subpart P, Appendix 1.

4. The claimant's subjective complaints are disproportionate to and not supported by the objective and substantial evidence in the record to the extent they suggest that he is disabled.

5. The claimant has the residual functional capacity (RFC) to do the following: (1) lift 30 pounds occasionally and 15 pounds frequently; (2) sit within normal limits; (3) stand and/or walk for two hours at a time and six hours total in a workday; (4) occasionally perform overhead work; (5) perform postural activities within normal limits; and (6) work in clean-air environments with no humidity or temperature extremes (i.e., not below 30 degrees or above 85 degrees Fahrenheit).

6. Based on his residual functional capacity, the claimant is unable to perform his past relevant work as heavy equipment operator (medium exertion, skilled); dump truck driver (medium exertion, unskilled); or tow truck operator (medium exertion, semiskilled).

7. The claimant was born on November 10, 1952. He is now 54 years old and has been classified as a person "closely approaching advanced age" since the filing date of his application for supplemental security income.

8. The claimant possesses a high school graduation equivalency diploma.

9. The claimant has no transferable work skills to jobs within his residual functional capacity.

10. Based on a capacity for the full range of light work, and the claimant's age, education, and work experience, 20 CFR 416.969, Rule 202.14, Table No. 2, Appendix 2, Subpart P, Regulations No. 4 would direct a conclusion of "not disabled."

11. Applying the above-cited vocational rule as a framework for decisionmaking, the claimant can perform a significant number of jobs in the regional and national economies. According to the vocational expert, he can perform approximately 75% of the

>        unskilled light jobs in the economy including hand packer, assembler, and order packer.
>
> 12.    The claimant was not under a disability, as defined in the Social Security Act, at any time through the date of this decision.

(R. 20-21.)

**Standard of Review**.  Under the provisions of 42 U.S.C. §405(g), "[t]he findings of the Commissioner as to any fact, if supported by substantial evidence, shall be conclusive. . . ."  Substantial evidence is "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'"  *Richardson v. Perales*, 402 U.S. 389, 401 (1971)(quoting *Consolidated Edison Company v. NLRB*, 305 U.S. 197, 229 (1938)).  It is "'more than a mere scintilla.'"  *Id*.  *LeMaster v. Weinberger*, 533 F.2d 337, 339 (6th Cir. 1976).  The Commissioner's findings of fact must be based upon the record as a whole.  *Harris v. Heckler*, 756 F.2d 431, 435 (6th Cir. 1985); *Houston v. Secretary*, 736 F.2d 365, 366 (6th Cir. 1984); *Fraley v. Secretary*, 733 F.2d 437, 439-440 (6th Cir. 1984).  In determining whether the Commissioner's decision is supported by substantial evidence, the Court must "'take into account whatever in the record fairly detracts from its weight.'"  *Beavers v. Secretary of Health, Education and Welfare*, 577 F.2d 383, 387 (6th Cir. 1978)(quoting *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488 (1950)); *Wages v. Secretary of Health and Human Services*, 755 F.2d 495, 497 (6th Cir. 1985).

**Plaintiff's Arguments.**  Plaintiff argues that the decision of the Commissioner denying benefits should be reversed because:

11

- <u>The administrative law judge erred by failing to give controlling weight, or at least great weight to the opinions of the treating physician</u>. Plaintiff argues that Dr. Nandyal's opinion should have been given controlling weight and that the administrative law judge failed to give good reasons for not doing so. Leslie maintains that the administrative law judge failed to consider the length of the treatment relationship, the nature and extent of the treatment relationship, acceptable medical evidence supporting Dr. Nandyal's assessment, and its consistency with other substantial evidence in the record. Plaintiff also points to other factors which include that Dr. Nandyal prescribed him numerous medications and referred him for testing to determine the cause of his pain. Leslie further argues that the administrative law judge's assertion that Dr. Nandyal simply relied on his subjective complaints was unfounded. Numerous objective test results showed that he suffered from a variety of impairments that caused pain and limited his ability to work.
- <u>The administrative law judge erred by concluding that plaintiff did not have a severe mental impairment</u>. Plaintiff argues that he suffered from dysthymia and an anxiety disorder. Dr. Donaldson believed that Leslie's mental impairments limited his ability to perform repetitive tasks, to attend to relevant stimuli, and his ability to relate to supervisors and co-workers. He also had limited interpersonal relationship skills and limited ability to withstand the stress and pressures associated with day-to-day work activity.

12

Dr. Donaldson assigned a GAF score of 45-55, which suggests that his ability to maintain competitive work would be significantly compromised. The vocational expert indicated that Dr. Donaldson's report was ambiguous, and the administrative law judge should have ordered another psychological examination of sought clarification of the report when the ambiguity was brought to his attention.

- <u>The administrative law judge erred by applying Medical-Vocational Rule 202.14 to plaintiff</u>. The administrative law judge made contradictory findings when he concluded that plaintiff had the residual functional capacity to perform a significant range of light, unskilled work when he noted that plaintiff could only occasionally perform overhead work, work in a clean-air environment with no humidity or temperature extremes. Plaintiff further argues that in determining that he could perform a full range of light work, the administrative law judge ignored Dr. Donaldson's findings of non-exertional impairments that substantially interfere with his ability to perform the full range of light work. A proper assessment of the record would result in a finding that Leslie is capable of performing, at the most, sedentary work. Under Medical-Vocational Rule 201.14, a person is considered disabled if he is closely approaching advanced age, has a high school education, does not have transferable work skills, and is only capable of sedentary work.

13

In the alternative, plaintiff also seeks a sentence six remand under 42 U.S.C. § 405(g). Plaintiff argues that he has obtained new evidence and that there is good cause for the failure to incorporate that evidence into the record in the prior proceeding. The administrative hearing took place on July 19, 2006. On July 25, 2006, Leslie was admitted to the hospital due to another heart attack. A July 26, 2006 heart catheterization showed that Leslie suffered from severe diffuse coronary artery disease, which was not amenable to further revascularization. A certified nurse practitioner indicated that Leslie was limited to ordinary physical therapy and incapable of working.

**Analysis.** With respect to plaintiff's cardiac impairment, the administrative law judge stated:

> His chest x-rays revealed evidence of prior open heart surgery but they were otherwise unremarkable (Exhibit 1F, p. 5). The claimant's December 2003 chest x-rays revealed no evidence of acute cardiopulmonary disease. (Exhibit 7F, p. 31). His March 2005 stress testing revealed normal left ventricular function and normal ejection fraction (Exhibit 7F, p. 8). An electrocardiogram revealed results nondiagnostic for ischemia (Exhibit 8F, p. 18). The claimant's January 2006 chest x-rays revealed no acute cardiopulmonary process (Exhibit 11F, p. 17).

(R. 16.) A July 2006 cardiac catheterization demonstrated severe diffused coronary artery disease, which was not amenable to further revascularization. Leslie was classified with Class III coronary artery disease, which meant that he should have limited ordinary physical activity and that he was unable to work. (R. 371.)

14

When the Appeals Council denies a claimant's request for review, the decision of the administrative law judge becomes the final decision of the Commissioner. *Casey v. Secy. of Health and Human Services*, 987 F.2d 1230, 1233 (6th Cir. 1993). This Court reviews the administrative law judge's decision, not that of the Appeals Council denying the request for review. *Id.* Consequently, only evidence of record before the administrative law judge may be considered by the District Court in reviewing the final decision of the Commissioner of Social Security denying benefits. *Cline v. Comm'r. of Social Security*, 96 F.3d 146, 148-49 (6th Cir. 1996).

A claimant may seek remand so that the evidence presented to the Appeals Council can be considered by the administrative law judge. *Id.*; *Gartman v. Apfel*, 220 F.3d 918, 922 (8th Cir. 2000).

Section 405(g), sentence six, provides, in relevant part:

> The court may . . . at any time order additional evidence to be taken before the [Commissioner], but only upon a showing that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding . . . .

The evidence supporting a motion to remand must be both new and material. *Cline v. Commissioner*, 96 F.3d 146, 148 (6th Cir. 1996). Evidence is "new only if it was 'not in existence or available to the claimant at the time of the administrative proceeding.' *Sullivan v. Finkelstein,* 496 U.S. 617, 626 (1990)." *Foster v. Halter*, 279 F.3d 348, 357 (6th Cir. 2001). It is material "only if there is 'a reasonable probability that the [Commissioner] would have reached a different disposition of the disability claim if

presented with the new evidence.' *Sizemore v. Secretary of Health & Human Services*, 865 F.2d 709, 711 (6th Cir. 1988)." *Id.* Good cause is shown "by demonstrating a reasonable justification for the failure to acquire and present the evidence for inclusion in the hearing before the ALJ. *Willis v. Secretary of Health & Human Services*, 727 F.2d 551, 554 (1984)(per curiam). *Id.* Merely cumulative evidence does not establish good cause for a remand. *Borman v. Heckler*, 706 F.2d 564, 568 (6th Cir. 1983); *Carroll v. Califano*, 619 F.2d 1157, 1162 (6th Cir. 1980). The plaintiff has the burden of establishing that the evidence is new and material and that there is good cause for not having presented the evidence to the Administrative Law Judge. *Id.*, citing, *Oliver v. Secretary of Health & Human Services*, 804 F.2d 964, 966 (6th Cir. 1986).

Defendant maintains that the evidence submitted to the Appeals Council does not provide a basis for remand. Defendant argues that the plaintiff could have obtained a similar statement from Ms. Hefferman, or other medical source, before the administrative law judge's decision. Defendant also argues that plaintiff has not demonstrated good cause for failing to obtain the evidence prior to the hearing. The Coronary Tree, dated July 26, 2006, predated the December 28, 2006 decision of the administrative law judge. (R. 372.)

Plaintiff submitted evidence indicating that he suffered from severe diffuse coronary artery disease which was not amenable to further revascularization. After reviewing the results of the July 2006 heart catheterization, a certified nurse practitioner stated that he was limited to ordinary physical activity and unable to work. Had the

16

administrative law judge reviewed this evidence prior to making his decision, there is a reasonable probability that the he would have reached a different disposition of the disability claim. Plaintiff was hospitalized on July 26, 2006, 7 days after the hearing. Quite simply, these records did not exist at the time of the hearing. On July 27, 2006, plaintiff's counsel forwarded these documents to the administrative law judge. The decision of the administrative law judge does not refer to this evidence, and he did not consider them in formulating his decision. Plaintiff has demonstrated the requisite good cause necessary for remand under sentence six.

Finding that there is good cause for a remand, plaintiff's January 24, 2008 motion to remand under sentence six (doc. 11) is **GRANTED.** This action is **REMANDED** to the Commissioner of Social Security under the provisions of 42 U.S.C. §405(g), sentence 6, to consider the new and material evidence presented by the plaintiff in support of this motion.

This is a pre-judgment remand. *See, Faucher v. Secretary of Health and Human Services*, 17 F.3d 171, 174 (6th Cir. 1994). While the Commissioner is considering the new and material evidence on remand, this case is **ADMINISTRATIVELY CLOSED.**

Under the provisions of 28 U.S.C. §636(b)(1)(A), Rule 72(a), Fed. R. Civ. P., and Eastern Division Order No. 91-3, pt. F, 5, either party may, within ten (10) days after this Order is filed, file and serve on the opposing party a motion for reconsideration by the District Judge. The motion must specifically designate the Order, or part thereof, in question and the basis for any objection thereto. The District Judge, upon consideration

of the motion, shall set aside any part of this Order found to be clearly erroneous or contrary to law.

                                              s/Mark R. Abel  
                                           United States Magistrate Judge